RACHEL KREVANS (CA SBN 116421)
RKrevans@mofo.com
JASON A. CROTTY (CA SBN 196036)
JCrotty@mofo.com
ELISABETH S. TRAUGOTT (CA SBN 215931)
ETraugott@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

MICHAEL W. VELLA (CA SBN 151796)
MVella@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California  92130-2040
Telephone: 858.720.5100
Facsimile: 858.720.5125

Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC., KAISER
FOUNDATION HOSPITALS, THE PERMANENTE
COMPANY, LLC, THE PERMANENTE FEDERATION LLC,
and THE PERMANENTE MEDICAL GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF THE WEST, KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, INC., THE PERMANENTE COMPANY, LLC, THE PERMANENTE FEDERATION, LLC, THE PERMANENTE MEDICAL GROUP, INC., AND PACIFICCORP,<br><br>Defendants. | Case No.    C0703004 JL<br><br>**KAISER PERMANENTE DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br>Hon. Martin Jenkins |

1    Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, The

2    Permanente Company, LLC, The Permanente Federation LLC, and The Permanente Medical

3    Group, Inc. (collectively "the Kaiser Permanente Defendants") respectfully submit their Answer,

4    Affirmative Defenses and Counterclaims to the complaint for patent infringement filed by Ronald

5    A. Katz Technology Licensing, L.P. ("RAKTL") and state as follows:

6                                    **THE PARTIES**

7        1.      The Kaiser Permanente Defendants lack sufficient information or knowledge

8    either to admit or deny the allegations in paragraph 1, and on that basis deny each and every

9    allegation in paragraph 1.

10       2.      The Kaiser Permanente Defendants lack sufficient information or knowledge

11   either to admit or deny the allegations in paragraph 2, and on that basis deny each and every

12   allegation in paragraph 2.

13       3.      The Kaiser Permanente Defendants admit the allegations in paragraph 3.

14       4.      The Kaiser Permanente Defendants admit the allegations in paragraph 4.

15       5.      The Kaiser Permanente Defendants admit the allegations in paragraph 5.

16       6.      The Kaiser Permanente Defendants admit the allegations in paragraph 6.

17       7.      The Kaiser Permanente Defendants admit the allegations in paragraph 7.

18       8.      The Kaiser Permanente Defendants lack sufficient information or knowledge

19   either to admit or deny the allegations in paragraph 8, and on that basis deny each and every

20   allegation in paragraph 8.

21                              **JURISDICTION AND VENUE**

22       9.      The Kaiser Permanente Defendants admit that RAKTL's complaint purports to

23   state claims for patent infringement under the United States patent statutes, 35 U.S.C. § 1 *et seq.*

24       10.     The Kaiser Permanente Defendants admit that this Court has jurisdiction over this

25   action under 28 U.S.C. §§ 1331 and 1338(a) inasmuch as RAKTL's complaint purports to state

26   claims for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et*

27   *seq.*

28

11.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 11, and on that basis deny each and every allegation in paragraph 11.

12.     The Kaiser Permanente Defendants admit that some of them operate medical facilities and provide prepaid medical services and operate automated telephone systems in this judicial district.  The Kaiser Permanente Defendants further admit that the Kaiser Permanente Defendants have designated an agent for service of process in the State of California.  The Kaiser Permanente Defendants deny each and every remaining allegation in paragraph 12.

13.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 13, and on that basis deny each and every allegation in paragraph 13.

14.     The Kaiser Permanente Defendants do not dispute venue in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## BACKGROUND FACTS

15.     The Kaiser Permanente Defendants admit that Mr. Katz appears as a named inventor on the face of all of the patents-in-suit.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 15, and on that basis deny each and every remaining allegation in paragraph 15.

16.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 16, and on that basis deny each and every allegation in paragraph 16.

17.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 17, and on that basis deny each and every allegation in paragraph 17.

18.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 18, and on that basis deny each and every allegation in paragraph 18.

19. The Kaiser Permanente Defendants admit that Mr. Katz is listed as an inventor on the face of more than fifty issued United States patents. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 19, and on that basis deny each and every remaining allegation in paragraph 19.

20. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 20, and on that basis deny each and every allegation in paragraph 20.

21. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 21, and on that basis deny each and every allegation in paragraph 21.

22. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 22, and on that basis deny each and every allegation in paragraph 22.

23. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 23, and on that basis deny each and every allegation in paragraph 23.

24. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 24, and on that basis deny each and every allegation in paragraph 24.

25. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations in paragraph 25, and on that basis deny each and every allegation in paragraph 25.

26. The Kaiser Permanente Defendants deny that they employ any of the purported inventions in any of the patents-in-suit. The Kaiser Permanente Defendants admit that some of them have been approached by RAKTL about licensing the patents-in-suit and further admit that those who have been approached have not taken such a license. The Kaiser Permanente Defendants deny that any such license is either warranted or necessary since the Kaiser Permanente Defendants do not infringe any valid, enforceable claim of any of the patents-in-suit.

1   The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or

2   deny the remaining allegations in paragraph 26 and on that basis deny each and every remaining

3   allegation in paragraph 26.

4                              **THE PATENTS-IN-SUIT**

5              27.    The Kaiser Permanente Defendants admit that U.S. Patent No. 4,792,968 ("the

6   '968 patent") is entitled "Statistical Analysis System For Use With Public Communication

7   Facility" and on its face lists Ronald A. Katz as the sole inventor and December 20, 1988 as the

8   issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The

9   Kaiser Permanente Defendants admit that the patent expired no later than December 20, 2005.

10  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or

11  deny the remaining allegations in paragraph 27, and on that basis deny each and every remaining

12  allegation in paragraph 27.

13             28.    The Kaiser Permanente Defendants admit that U.S. Patent No. 4,930,150 ("the

14  '150 patent") is entitled "Telephonic Interface Control System" and on its face lists Ronald A.

15  Katz as the sole inventor and May 29, 1990 as the issue date, but, for the reasons set forth below,

16  deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the

17  patent expired no later than December 20, 2005.  The Kaiser Permanente Defendants lack

18  sufficient information or knowledge either to admit or deny the remaining allegations in

19  paragraph 28, and on that basis deny each and every remaining allegation in paragraph 28.

20             29.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,048,075 ("the

21  '075 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

22  Ronald A. Katz as the sole inventor and September 10, 1991 as the issue date, but, for the reasons

23  set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

24  admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

25  Defendants lack sufficient information or knowledge either to admit or deny the remaining

26  allegations in paragraph 29, and on that basis deny each and every remaining allegation in

27  paragraph 29.

28

30.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,109,404 ("the '404 patent") is entitled "Telephonic Call Processor with Select Call Routing" and on its face lists Ronald A. Katz and Thomas D. Thompson as co-inventors and April 28, 1990 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable. The Kaiser Permanente Defendants admit that the patent expired no later than December 20, 2005. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 30, and on that basis deny each and every remaining allegation in paragraph 30.

31.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,128,984 ("the '984 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and July 7, 1992 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 31, and on that basis deny each and every remaining allegation in paragraph 31.

32.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,251,252 ("the '252 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and October 5, 1993 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 32, and on that basis deny each and every remaining allegation in paragraph 32.

33.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,255,309 ("the '309 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and October 19, 1993 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable. The Kaiser Permanente Defendants admit that the patent expired no later than December 20, 2005. The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining

1    allegations in paragraph 33, and on that basis deny each and every remaining allegation in

2    paragraph 33.

3        34.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,259,023 ("the

4    '023 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

5    Ronald A. Katz as the sole inventor and November 2, 1993 as the issue date, but, for the reasons

6    set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

7    admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

8    Defendants lack sufficient information or knowledge either to admit or deny the remaining

9    allegations in paragraph 34, and on that basis deny each and every remaining allegation in

10   paragraph 34.

11       35.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,351,285 ("the

12   '285 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face

13   lists Ronald A. Katz as the sole inventor and September 27, 1994 as the issue date, but, for the

14   reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente

15   Defendants admit that the patent expired no later than December 20, 2005.  The Kaiser

16   Permanente Defendants lack sufficient information or knowledge either to admit or deny the

17   remaining allegations in paragraph 35, and on that basis deny each and every remaining allegation

18   in paragraph 35.

19       36.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,561,707 ("the

20   '707 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

21   Ronald A. Katz as the sole inventor and October 1, 1996 as the issue date, but, for the reasons set

22   forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

23   admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

24   Defendants lack sufficient information or knowledge either to admit or deny the remaining

25   allegations in paragraph 36, and on that basis deny each and every remaining allegation in

26   paragraph 36.

27       37.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,684,863 ("the

28   '863 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

1    Ronald A. Katz as the sole inventor and November 4, 1997 as the issue date, but, for the reasons

2    set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

3    admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

4    Defendants lack sufficient information or knowledge either to admit or deny the remaining

5    allegations in paragraph 37, and on that basis deny each and every remaining allegation in

6    paragraph 37.

7        38.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,787,156 ("the

8    '156 patent") is entitled "Telephonic Interface Lottery System" and on its face lists Ronald A.

9    Katz as the sole inventor and July 28, 1998 as the issue date, but, for the reasons set forth below,

10   deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the

11   patent expired no later than December 20, 2005.  The Kaiser Permanente Defendants lack

12   sufficient information or knowledge either to admit or deny the remaining allegations in

13   paragraph 38, and on that basis deny each and every remaining allegation in paragraph 38.

14       39.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,815,551 ("the

15   '551 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

16   Ronald A. Katz as the sole inventor and September 29, 1998 as the issue date, but, for the reasons

17   set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

18   admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

19   Defendants lack sufficient information or knowledge either to admit or deny the remaining

20   allegations in paragraph 39, and on that basis deny each and every remaining allegation in

21   paragraph 39.

22       40.    The Kaiser Permanente Defendants admit that U.S. Patent No. 5,828,734 ("the

23   '734 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and

24   on its face lists Ronald A. Katz as the sole inventor and October 27, 1998 as the issue date, but,

25   for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser

26   Permanente Defendants lack sufficient information or knowledge either to admit or deny the

27   remaining allegations in paragraph 40, and on that basis deny each and every remaining allegation

28   in paragraph 40.

41.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,835,576 ("the '576 patent") is entitled "Telephonic-Interface Lottery Device" and on its face lists Ronald A. Katz as the sole inventor and November 10, 1998 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 41, and on that basis deny each and every remaining allegation in paragraph 41.

42.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,898,762 ("the '762 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and April 27, 1999 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 42, and on that basis deny each and every remaining allegation in paragraph 42.

43.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,917,893 ("the '893 patent") is entitled "Multiple Format Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and June 29, 1999 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 43, and on that basis deny each and every remaining allegation in paragraph 43.

44.     The Kaiser Permanente Defendants admit that U.S. Patent No. 5,974,120 ("the '120 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and on its face lists Ronald A. Katz as the sole inventor and October 26, 1999 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the

1   remaining allegations in paragraph 44, and on that basis deny each and every remaining allegation

2   in paragraph 44.

3       45.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,035,021 ("the

4   '021 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

5   Ronald A. Katz as the sole inventor and March 7, 2000 as the issue date, but, for the reasons set

6   forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

7   admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

8   Defendants lack sufficient information or knowledge either to admit or deny the remaining

9   allegations in paragraph 45, and on that basis deny each and every remaining allegation in

10  paragraph 45.

11      46.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,044,135 ("the

12  '135 patent") is entitled "Telephone Interface Lottery System" and on its face lists Ronald A.

13  Katz as the sole inventor and March 28, 2000 as the issue date, but, for the reasons set forth

14  below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that

15  the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack sufficient

16  information or knowledge either to admit or deny the remaining allegations in paragraph 46, and

17  on that basis deny each and every remaining allegation in paragraph 46.

18      47.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,148,065 ("the

19  '065 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

20  Ronald A. Katz as the sole inventor and November 14, 2000 as the issue date, but, for the reasons

21  set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

22  admit that the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack

23  sufficient information or knowledge either to admit or deny the remaining allegations in

24  paragraph 47, and on that basis deny each and every remaining allegation in paragraph 47.

25      48.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,335,965 ("the

26  '965 patent") is entitled "Voice-Data Telephonic Interface Control System" and on its face lists

27  Ronald A. Katz as the sole inventor and January 1, 2002 as the issue date, but, for the reasons set

28  forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

1   admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

2   Defendants lack sufficient information or knowledge either to admit or deny the remaining

3   allegations in paragraph 48, and on that basis deny each and every remaining allegation in

4   paragraph 48.

5       49.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,349,134 ("the

6   '134 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists

7   Ronald A. Katz as the sole inventor and February 19, 2002 as the issue date, but, for the reasons

8   set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants

9   admit that the patent expired no later than December 20, 2005.  The Kaiser Permanente

10  Defendants lack sufficient information or knowledge either to admit or deny the remaining

11  allegations in paragraph 49, and on that basis deny each and every remaining allegation in

12  paragraph 49.

13      50.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,434,223 ("the

14  '223 patent") is entitled "Telephone Interface Call Processing System With Call Selectivity" and

15  on its face lists Ronald A. Katz as the sole inventor and August 13, 2002 as the issue date, but, for

16  the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente

17  Defendants admit that the patent expired no later than July 10, 2005.  The Kaiser Permanente

18  Defendants lack sufficient information or knowledge either to admit or deny the remaining

19  allegations in paragraph 50, and on that basis deny each and every remaining allegation in

20  paragraph 50.

21      51.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,512,415 ("the

22  '415 patent") is entitled "Telephonic Interface Game Control System" and on its face lists Ronald

23  A. Katz as the sole inventor and January 28, 2003 as the issue date, but, for the reasons set forth

24  below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that

25  the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack sufficient

26  information or knowledge either to admit or deny the remaining allegations in paragraph 51, and

27  on that basis deny each and every remaining allegation in paragraph 51.

28

52.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,570,967 ("the '967 patent") is entitled "Voice-Data Telephonic Interface Control System" and on its face lists Ronald A. Katz as the sole inventor and May 27, 2003 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 52, and on that basis deny each and every remaining allegation in paragraph 52.

53.     The Kaiser Permanente Defendants admit that U.S. Patent No. 6,678,360 ("the '360 patent") is entitled "Telephonic-Interface Statistical Analysis System" and on its face lists Ronald A. Katz as the sole inventor and January 13, 2004 as the issue date, but, for the reasons set forth below, deny that the patent is valid or enforceable.  The Kaiser Permanente Defendants admit that the patent expired no later than July 10, 2005.  The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the remaining allegations in paragraph 53, and on that basis deny each and every remaining allegation in paragraph 53.

## COUNT 1

### (PATENT INFRINGEMENT BY BANK OF THE WEST)

54-60. The allegations of paragraph 54-60 are not directed at the Kaiser Permanente Defendants and, therefore, no answer is required or made.

## COUNT II

### (PATENT INFRINGEMENT BY THE KAISER PERMANENTE DEFENDANTS)

61.     The Kaiser Permanente Defendants repeat and incorporate by reference their responses to paragraphs 1-53 as if fully set forth herein.

62.     The Kaiser Permanente Defendants lack sufficient information or knowledge either to admit or deny the allegations of paragraph 62, and on that basis deny each and every allegation in paragraph 62.

63.     The Kaiser Permanente Defendants admit that some of them operate automated telephone systems which contain interactive features.  Except as expressly admitted, the Kaiser Permanente Defendants deny each and every remaining allegation in paragraph 63.

64.    The Kaiser Permanente Defendants deny the allegations in paragraph 64.

65.    The Kaiser Permanente Defendants deny the allegations in paragraph 65.

66.    The Kaiser Permanente Defendants deny the allegations in paragraph 66.

67.    The Kaiser Permanente Defendants deny the allegations in paragraph 67.

## COUNT III

### (PATENT INFRINGEMENT BY PACIFICORP)

68-74.  The allegations of paragraph 68-74 are not directed at the Kaiser Permanente

Defendants and, therefore, no answer is required or made.

### REQUEST FOR RELIEF

The Kaiser Permanente Defendants deny that RAKTL is entitled to any of the relief

sought.

### AFFIRMATIVE DEFENSES

Without admitting or acknowledging that they bear the burden of proof as to any of them,

the Kaiser Permanente Defendants, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure,

assert the following affirmative defenses:

### First Affirmative Defense
### (Non-Infringement)

68.    RAKTL is not entitled to any relief against the Kaiser Permanente Defendants

because the Kaiser Permanente Defendants are not infringing, and have not infringed, either

literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any

way, any valid, enforceable claim of the '968, '252, '309, '285, '707, '863, '156, '551, '734,

'762, '893, '120, '135, '065, '965, '134, '223 and '360 patents (collectively "the RAKTL asserted

patents").

### Second Affirmative Defense
### (Patent Invalidity)

69.    The RAKTL asserted patents, and all of their claims, are invalid under one or more

sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103

and 112.

**Third Affirmative Defense**
**(Scope of the Prior Art)**

70.     The prior art known before the alleged inventions covered by the RAKTL asserted patents limits and restricts the scope of the RAKTL asserted patents such that the Kaiser Permanente Defendants do not infringe any claims of the RAKTL asserted patents.

**Fourth Affirmative Defense**
**(Unclean Hands)**

71.     Each of RAKTL's claims against the Kaiser Permanente Defendants is barred, in whole or in part, by the doctrine of unclean hands.

**Fifth Affirmative Defense**
**(Waiver, Laches, or Estoppel)**

72.     Each of RAKTL's claims against the Kaiser Permanente Defendants is barred, in whole or in part, by the doctrine of waiver, laches or equitable estoppel due to RAKTL's unreasonable delay in bringing this suit against them.

**Sixth Affirmative Defense**
**(Prosecution History Estoppel)**

73.     On the basis of the prosecution history of each of the RAKTL asserted patents and related patents, RAKTL's claims against the Kaiser Permanente Defendants are barred, in whole or in part, by prosecution history estoppel.

**Seventh Affirmative Defense**
**(Prosecution Laches)**

74.     On the basis of the prosecution history of each of the RAKTL asserted patents and related patents, RAKTL's claims against the Kaiser Permanente Defendants are barred, in whole or in part, by prosecution laches.

**Eighth Affirmative Defense**
**(Patent Misuse)**

75.     RAKTL's claims against the Kaiser Permanente Defendants are barred in whole or in part because RAKTL has engaged in patent misuse.

## Ninth Affirmative Defense
### (Implied License or Patent Exhaustion)

76.     RAKTL's claims against the Kaiser Permanente Defendants are barred in whole or in part by express or implied license and/or by the doctrine of patent exhaustion.

## Tenth Affirmative Defense
### (Statute of Limitations)

77.     RAKTL's claims against the Kaiser Permanente Defendants are barred by the statute of limitations set out in 35 U.S.C. § 286 to the extent the Kaiser Permanente Defendants' alleged infringement occurred more than six years prior to RAKTL filing this action.

## Eleventh Affirmative Defense
### (Failure to Provide Notice)

78.     RAKTL's claims for damages against the Kaiser Permanente Defendants are barred by 35 U.S.C. § 287(a) for any alleged infringement that occurred prior to RAKTL giving actual notice of the RAKTL asserted patents to the Kaiser Permanente Defendants.

## Twelfth Affirmative Defense
### (Unenforceability)

79.     The RAKTL asserted patents are unenforceable, in whole or in part, due to the inequitable conduct by RAKTL, prior assignees of some of the RAKTL asserted patents, by Ronald A. Katz, and/or by their attorneys and appointed representatives (collectively "Katz") before the United States Patent and Trademark Office ("the PTO") during the prosecution of the RAKTL asserted patents and/or related patents and patent applications.

80.     Title 37 of the Code of Federal Regulations ("CFR") § 1.56 and the Manual of Patent Examination Procedure ("MPEP") § 2000.01, *et seq*. impose a duty of candor and good faith on each individual associated with the filing and prosecution of a patent application before the PTO, which requires that he or she disclose to the PTO all information that is material to the patentability of the application under examination.  Breach of this duty of candor, good faith and honesty with intent to deceive the PTO constitutes inequitable conduct so as to render the affected patents unenforceable.

81.     Upon information and belief, Katz, with the intent to deceive the PTO into issuing patent claims of a scope beyond any to which Katz was entitled, exercised a pattern and practice of conduct as part of the prosecution of the applications that ultimately led to the RAKTL asserted patents and related applications, upon which the RAKTL asserted patents claim priority and which also contain related and material claimed subject matter, that violated the duty of candor and good faith and honesty owed by patent applicants.

82.     Upon information and belief, on multiple occasions as part of the prosecution of the RAKTL asserted patents and in related patents and/or applications, Katz, with an intent to deceive the PTO (i) failed to disclose material prior art known to Katz; (ii) failed to inform the PTO of inconsistent positions taken during prosecution; (iii) failed to identify and disclose material information from related litigation or proceedings; (iv) failed to inform patent examiners of adverse findings by other examiners; (v) made false claims of priority so as to avoid prior art; and (vi) engaged in a pattern of delaying disclosure of known prior art to the PTO and mischaracterizing the relevance of that prior art.  Katz's repeated and intentional violations of the duty of candor, good faith and honesty, which are set forth in detail below, render the RAKTL asserted patents unenforceable.

83.     The following patents, some of which are RAKTL asserted patents and some of which are related to the RAKTL asserted patents, are particularly relevant to showing the unenforceability of the RAKTL asserted patents based on Katz's inequitable conduct:  U.S. Patent Nos. 4,792,968 ("the '968 patent"), 4,845,739 ("the '739 patent"), 4,930,150 ("the '150 patent"), 5,014,298 ("the '298 patent"), 5,048,075 ("the '075 patent"), 5,073,929 ("the '929 patent"), 5,218,631 ("the '631 patent"), 5,224,153 ("the '153 patent"), 5,359,645 ("the '645 patent"), 5,365,575 ("the '575 patent"), 5,561,707 ("the '707 patent"), 5,793,846 ("the '846 patent"), 5,835,576 ("the '576 patent"), 6,016,344 ("the '344 patent"), 6,151,387 ("the '387 patent") and 6,335,965 ("the '965 patent").  The relevant related applications include U.S. Patent Application Nos. 06/753,299 ("the '299 application"), now abandoned, 07/342,506 ("the '506 application"), now abandoned, and 07/640,337 ("the '337 application"), now abandoned.

84.    All of the RAKTL asserted patents claim closely related subject matter and share a common genealogy.  The inequitable conduct committed by Katz as part of the prosecution of the above-identified patents, the RAKTL asserted patents, and related patents and applications has infected the RAKTL asserted patents, thus rendering them unenforceable due to inequitable conduct.

85.    Upon information and belief, as part of the prosecution of the RAKTL asserted patents and related patents and applications, Katz repeatedly failed to disclose material references known to Katz with an intent to deceive the PTO, as set forth below.

**The Barger Patent**

86.    Upon information and belief, Katz had knowledge of and failed to disclose U.S. Patent No. 4,071,698 to Barger, *et al.* ("the Barger patent") to the PTO as part of the prosecution of several of the RAKTL asserted patents and related patents and/or applications.

87.    The Barger patent was filed with the PTO on January 10, 1977, eight years before the effective filing date of Katz's first patent, and is prior art to all of the RAKTL asserted patents.

88.    The Barger patent is material to the RAKTL asserted patents.  It discloses an automated interactive voice system for marketing merchandise, such as audio recordings.  The customer selects and listens to an audio demonstration and may arrange payment by credit card or other means.  The system maintains a complete record of all transactions, including the number of requests for demonstrations by each customer, in order to maintain current inventory records and to determine trends.  The system can use this transaction history to determine whether a customer is a "free loader" and limits the customer's access to the system accordingly.

89.    The system disclosed in the Barger patent is also capable of assigning a caller to an operator who obtains required information from the customer that is placed in a database.  When the customer requests a specific demonstration, the operator enters the appropriate code into the system and plays it for the customer.  Upon completion of the demonstration, the customer is returned to a live operator, who will take the order.

90.     Many features relevant to Katz's claims are disclosed in the Barger patent.  For example, the Barger patent teaches storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.  Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the PTO in deciding whether to allow Katz's then-pending claims.

91.     As further evidence of its materiality, the Barger patent has been the basis for third party requests for reexamination of the '707 patent, which shares a similar specification and subject matter with many of the RAKTL asserted patents.  In 2006 the PTO rejected all 207 claims of the '707 patent based, in part, on the Barger patent.  Specifically, in Reexamination Numbers 90/007,074 and 90/006,978 (combined proceedings) the examiner rejected claims 9, 12, 22-25, 137, 141, 144-46, 150-151, 154, 156, and 167 of the '707 patent under 35 U.S.C. § 102 in light of the Barger patent.

92.     Upon information and belief, Katz became aware of the Barger patent and its materiality at least as early as January 1989.  Upon information and belief, on or about December 1988, the European Patent Office sent a search report for one of Katz's corresponding European patent applications to Katz's European patent attorney, Graham Frederic Coles.  The search report identified the Barger patent as being "particularly relevant" to Katz's application.

93.     Notwithstanding Katz's knowledge of the Barger patent and of its materiality, Katz failed to disclose this material prior art to the PTO during prosecution of at least the '739, '150, '298, '929, '153, '965, '252, '734 and '863 patents.  Katz also failed to disclose the Barger patent to the PTO as part of the substantive prosecution of the '285 patent; instead Katz withheld the Barger patent from the PTO until after a notice of allowance had issued.

94.     Upon information and belief, Katz withheld the Barger patent with an intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled to in at least the '739, '150, '298, '929, '153, '965, '252, '734, '863 and '285 patents, thereby committing inequitable conduct and rendering those patents unenforceable, all of which are RAKTL asserted patents or patents from which the RAKTL asserted patents claim priority, or patents related to the RAKTL asserted patents.

95.     The inequitable conduct committed by Katz with respect to at least the '739, '150, '298, '929, '153, '965, '252, '734, '863 and '285 patents taints other related patents, which claim priority to, or are related to these patents and which claim related subject matter to which the Barger patent is material, rendering these related patents unenforceable.

96.     At least the '893 patent, which is a RAKTL asserted patent, claims priority from and/or is related to and claims related subject matter to both the '150 and '285 patents to which the Barger patent is material.  Accordingly, at least the '893 patent is likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the '150 and '285 patents.

97.     At least the '252, '734, '120 and '223 patents, which are RAKTL asserted patents, claim priority from and claim related subject matter to either or both of the '739 and '929 patents to which the Barger patent is material.  Accordingly, at least the '252, '734, '120, and '223 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the '929 and '739 patents.

98.     Likewise, at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 patents, which are RAKTL asserted patents, all claim priority from and claim subject matter related to the '739 patent to which the Barger patent is also material.  Accordingly, at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz as part of the prosecution of the '739 patent.

**The DeBruyn Reference**

99.     Upon information and belief, Katz withheld European Patent Specification No. 0032410 to DeBruyn, which corresponds with Canadian Patent No. 1,162,336 ("the DeBruyn patent") from the PTO during prosecution of many of Katz's earlier patents.

100.     The DeBruyn patent was published on July 22, 1981 and disclosed an interactive voice system for implementing a lottery.  The DeBruyn patent was cited in the same European search report that identified the Barger patent.  The European search report also identified the

1    DeBruyn patent as "particularly relevant." Therefore, Katz was aware of the materiality of the

2    DeBruyn patent at least as early as January 1989.

3        101.    The DeBruyn patent discloses many features relevant to Katz's claims, including

4    receiving the caller's telephone number automatically from the telephone network, prompting the

5    caller with instructions, receiving data entered via touch-tone keypads, storing caller-entered data,

6    processing caller-entered data, and qualifying callers.

7        102.    As further evidence of its materiality, the DeBruyn patent has been the basis for

8    third party requests for reexamination of the '023, '309 and '707 patents, which share similar

9    specifications and subject matter with many of the RAKTL asserted patents.  The PTO has

10   rejected many of the claims of the '023, '309 and '707 patents under 35 U.S.C. §§ 102 and 103

11   based on the DeBruyn patent alone or in combination with other references.

12       103.    In Reexamination Numbers 90/006,977 and 90/007,058 (combined proceedings)

13   the PTO rejected claims 1, 2, 8, 10, 21, 22-25, and 26 of the '023 patent under 35 U.S.C. § 102 in

14   light of the DeBruyn patent.  The PTO also rejected claims 5, 6, 20, 22, and 23 of the '023 patent

15   under 35 U.S.C. § 103 in light of the DeBruyn patent in combination with other references.

16       104.    In Reexamination Numbers 90/007,092 and 90/006,976 (combined proceedings)

17   the PTO rejected claims 23, 25-37, 41-43, 46, 50 and 51 of the '309 patent under 35 U.S.C. § 102

18   in light of the DeBruyn patent.  The PTO also rejected claims 1, 7-12, 14, 20, 32, 38-42, and 52-

19   58 of the '309 patent under 35 U.S.C. § 103 in light of the DeBruyn patent in combination with

20   other references.

21       105.    In Reexamination Numbers 90/007,074 and 90/006,978 (combined proceedings)

22   the PTO rejected claims 1, 4, 9, 12, 22-24, 26, 32-34, 69, 84-86, 88-93, 96-102, 106-108, 115,

23   119-123, 131-132, 135, 137, 141-147, 150-153, 165-166, 183-190, 196-200, 202-203, and 206 of

24   the '707 patent under 35 U.S.C. § 102 in light of the DeBruyn patent.  The PTO also rejected

25   claims 1-3, 5-6, 10-11, 14-19, 26, 28-35, 69, 84-86, 88-93, 96-104, 106-110, 115, 119-124, 131-

26   132, 135, 138-140, 163-164, 168 183-200, 202, 203, and 206 of the '707 patent under 35 U.S.C. §

27   103 in light of the DeBruyn patent in combination with other references.

28

106.    Upon information and belief, Katz was aware of the materiality, significance and relevance of the DeBruyn patent and his failure to disclose it to the PTO during prosecution of at least the '739, '252, '150, '075, '298, '929, '153, '285, '734, '965 and '863 patents was intentional.

107.    Upon information and belief, Katz withheld the DeBruyn patent from the PTO with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled in at least the '739, '252, '150, '075, '298, '929, '153, '285, '734, '965 and '863 patents, thereby committing inequitable conduct and rendering those patents unenforceable.  The '739, '252, '150, '075, '298, '929, '153, '285, '734, '965 and '863 patents are all RAKTL asserted patents, patents from which the RAKTL asserted patents claim priority, or patents related to the RAKTL asserted patents.

108.    At least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 patents, which are RAKTL asserted patents, all claim priority from and claim subject matter related to the '739 patent to which the DeBruyn patent is also material.  Accordingly, at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '739 patent.

**The Yoshizawa Reference**

109.    As part of the prosecution of at least the '575, '252, '734 and '965 patents, Katz failed to disclose a prior art article entitled "Voice Response System For Telephone Betting" by Yoshizawa, *et al*. ("the Yoshizawa article").  The article appeared in the 1977 issue of *Hitachi Review* magazine.

110.    The Yoshizawa article discloses an automatic off-track betting system.  The system includes a voice response unit, a public telephone network and a central processing unit. Incoming calls are answered by the voice response unit prompting the caller to enter an account number and password, and then select one or more pari-mutuel tickets, for example, a wager on a horse to "show."  The entered data is then stored in the caller's account file.  Each wager is counted against a preset daily wagering limit.  The caller is provided with a registration number

referencing the transaction. Ticket payments are made automatically by deducting the cost of the ticket from the caller's bank account. The article specifically mentions that the system could be used for "winning lot number service", or a lottery.

111.    Many features relevant to at least the '575, '252, '734 and '965 patents are disclosed in the Yoshizawa article. For example, Yoshizawa discloses limiting access and use to a telephone-based gambling or lottery system and qualifying callers based on an account number.

112.    Upon information and belief, Katz was aware of the materiality of the Yoshizawa article at least as early as September 2, 1992, well before the issuance of the '575, '252, '734 and '965 patents, when it was cited in response to interrogatories in the *First Data Resources, Inc. v. West Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal 1991) litigation.

113.    Notwithstanding Katz's knowledge of the Yoshizawa article and its materiality to at least the '575 patent, upon information and belief, Katz failed to disclose the reference to the PTO as part of the prosecution of at least the '575, '252, '734 and '965 patents in violation of Katz's duty of candor.

114.    Upon information and belief, Katz withheld the material Yoshizawa article from the PTO as part of the prosecution of at least the '575, '252, '734 and '965 patents with intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '575, '252, '734 and '965 patents unenforceable.

115.    At least the '135 and '156 patents, which are RAKTL asserted patents, directly claim priority from and claim subject matter related to the '575 patent to which the Yoshizawa article was material. Accordingly, at least the '135 and '156 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '575 patent.

116.    At least the '065, '120, '135, '156, '223, '360, '551, '863 and '893 patents are related to the '252 and '575 patents and claim subject matter to which the Yoshizawa article was material. Accordingly, at least the '065, '120, '135, '156, '223, '360, '551, '863 and '893 patents

1   are rendered unenforceable by inequitable conduct by Katz's failure to disclose the Yoshizawa

2   article.

3                                    **The Florafax Reference**

4        117.    Upon information and belief, during prosecution of the '575 and '576 patent, Katz

5   had knowledge of and failed to disclose a brochure dated January 22, 1986 and circulated by

6   Florafax at or around that time ("the Florafax brochure").

7        118.    The Florafax brochure is material to at least the '575 and '576 patents. The

8   Florafax brochure discloses a service for providing a recorded message in association with the

9   delivery of a floral bouquet. After purchasing a bouquet, the sender receives a card from the

10  florist that includes a telephone number and an ID number. Upon calling the number indicated,

11  the sender is prompted to enter the ID number and record a personal message. When the flowers

12  are delivered, a corresponding card instructs the recipient to call a specified telephone number to

13  hear the sender's personal message. The message may only be played twice before it is

14  automatically erased. The Florafax "talking bouquet" system was test marketed at least as early as

15  December 1985, demonstrating public use of the concepts embodied in the brochure.

16       119.    The Florafax brochure and associated service operation disclose many of the

17  features claimed in at least the '575 and '576 patents. Upon information and belief, Katz was

18  aware of the materiality of the Florafax brochure at least as early as September 2, 1992, over two

19  years before the issuance of the '575 patent and over seven years before the issuance of the '576

20  patent, when it was cited in response to interrogatories in the *First Data Resources, Inc. v. West*

21  *Interactive Corp.*, Civil Action No. 91-4471-TJH (C.D. Cal 1991) litigation.

22       120.    Upon information and belief, notwithstanding Katz's knowledge of the Florafax

23  brochure and its materiality, Katz failed to disclose it as part of the prosecution of at least the '575

24  and '576 patents in violation of Katz's duty of candor.

25       121.    Upon information and belief, Katz intentionally withheld the Florafax brochure

26  from the PTO as part of the prosecution of at least the '575 and '576 patents with an intent to

27  deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby

28  committing inequitable conduct and rendering at least the '575 and '576 patents unenforceable.

122.    At least the '156 and '135 patents, which are RAKTL asserted patents, claim priority from and claim subject matter related to the '575 patent to which the Florafax brochure was material.  Accordingly, at least the '156 and '135 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '575 patent.

123.    At least the '135 patent, which is a patent-in-suit, claims priority from and claims subject matter related to the '576 patent to which the Florafax brochure was material. Accordingly, at least the '135 patent is likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the '576 patent.

**The Katz PCT Reference**

124.    Upon information and belief, Katz failed to disclose the publication of Katz's own PCT application, WO 87100375 ("the WO '375 application") during the prosecution of the '285, '863, '156 and '551 patents, which are all RAKTL asserted patents.  Upon information and belief, Katz also failed to disclose the WO '375 application as part of the prosecution of at least the related '739 and '929 patents.

125.    The WO '375 application was published on January 15, 1987.  The WO '375 application would therefore be considered prior art for any claims with a filing date more than a year after the publication date under 35 U.S.C. § 102(b).  In particular, the WO '375 application constituted prior art to all claims that incorporated any new subject matter added in these applications, including at least the '739, '929, '285, '863, '156 and '551 patents.

126.    The published WO '375 application would have been material to a PTO examiner in determining what claims, if any, Katz might be entitled to in the '285, '863, '156 and '551 RAKTL asserted patents and the related '739 and '929 patents.  The WO '375 application would have been relevant to many of the basic elements claimed in the patents–in–suit, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

127.    Upon information and belief, despite Katz's duty to disclose material information to the PTO, and despite Katz's personal knowledge of the WO '375 application and its

1    materiality, Katz failed to disclose the WO '375 application to the PTO during the examination of

2    at least the '285, '863, '156, '551, '739 and '929 patents.

3    128.    Upon information and belief, Katz intentionally withheld the WO '375 application

4    from the PTO during the examination of at least the '285, '863, '156, '551, '739 and '929 patents

5    with an intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was

6    entitled, thereby committing inequitable conduct and rendering the '285, '863, '156, '551, '739

7    and '929 patents unenforceable.

8    129.    The inequitable conduct committed by Katz in connection with the '285, '863,

9    '156, '551, '739 and '929 patents taints other related patents which claim priority from those

10    patents and which claim related subject matter to which the WO '375 application was material,

11    rendering these related patents unenforceable.  For example, all of the Katz asserted patents, with

12    the exception of the '968 patent, claim priority from and claim subject matter related to the '739

13    patent to which the WO '375 application was material.  Accordingly, at least the '252, '734, '120,

14    '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 patents are

15    likewise rendered unenforceable due to inequitable conduct committed in the parent '739 patent.

16    **The Periphonics References**

17    130.    Upon information and belief, Katz intentionally withheld from the Patent and

18    Trademark Office highly relevant and material prior art by the Periphonics Corporation

19    ("Periphonics") in order to obtain claims to which Katz was not entitled.

20    131.    Upon information and belief, in April of 1993, in connection with *First Data*

21    *Resources, Inc. v. West Interactive Corp.,* CV 91-4471TJH, U.S. District Court, Central District

22    of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West

23    materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm").

24    132.    Upon information and belief, the Nilsson firm was involved in prosecuting many

25    of Mr. Katz's patent applications, including many of those which would later issue as the RAKTL

26    asserted patents.

27    133.    Upon information and belief, included in the West materials were a number of

28    Periphonics references, including 1) Bank-From-Home Product Description, Publication

1    #3000002, January 7, 1980 ("the Bank-From-Home reference") (Bates numbers W73055-

2    W73095) and 2) Periphonics VoicePac System with Peritalk/Announce Product Description and

3    user Guide, Publication #3270601C, 1987 ("the VoicePac reference") (Bates numbers

4    W73219-W73302).

5         134.    Upon information and belief, both the Bank-From-Home reference and VoicePac

6    reference are highly relevant and material to many claims of the RAKTL asserted patents.  The

7    Bank-From-Home reference describes such limitations of claims of the RAKTL asserted patents

8    as structures for interfacing, storing, qualifying, switching, processing, voice generation,

9    verifying credit and designating, as related to callers to the disclosed system.  The VoicePac

10   reference describes such limitations of claims of the RAKTL asserted patents as interfacing

11   callers to the system and transferring callers to a customer service representative.

12        135.    Upon information and belief, during the prosecution of U.S. Patent Application

13   No. 08/306,456, which ultimately issued as the '965 patent, Katz stated: "During litigation [of the

14   West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural

15   related documents grouped together), were identified by the defendant.  However, during pretrial

16   procedures, the defendant distilled the applied art to 59 separate items (including single or plural

17   related documents)."  Paper no. 3, filed November 4, 1994.  Katz also stated:  "The voluminous

18   quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second

19   set of forms PTO-1449 (Supplemental I)."  Paper no. 3, filed November 4, 1994.

20        136.    Upon information and belief, Katz made the same statements in at least those

21   applications that later issued as the '285 patent and the '707 patent.

22        137.    Upon information and belief, at least the applications for the '863 and '551 patents

23   refer the examiner to the references disclosed during the prosecution of the '707 patent.

24        138.    Upon information and belief, while other references in the West materials were

25   submitted to the PTO during prosecution of the '707, '965, '285, '863 and '551 patents, the Bank-

26   From-Home and VoicePac references were withheld despite knowledge of their materiality.

27        139.    Katz's failure to disclose this material prior art was a violation of the duty of

28   candor owed to the PTO, and constitutes inequitable conduct.

140.     Due to the inequitable conduct that occurred during the prosecution of their respective applications, at least the '707, '965, '285, '863 and '551 patents are rendered unenforceable.

141.     At least the '065 and '360 patents are related to and claim related subject matter to the '551 patent to which the Bank-From-Home and VoicePac references were material. Accordingly, at least the '065 and '360 patents are likewise rendered unenforceable due to inequitable conduct committed by Katz during the prosecution of the '551 patent.

142.     At least the '893 patent is related to and claims related subject matter to the '285 patent to which the Bank-From-Home and VoicePac references were material. Accordingly, at least the '893 patent is likewise rendered unenforceable due to inequitable conduct committed by Katz during the prosecution of the '285 patent.

143.     Thus, Katz's inequitable conduct renders each of the '965, '285, '863, '551, '893, '065, '707 and '360 patents unenforceable.

**The Corbett Reference**

144.     Upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "Telephone Enquiry System Using Synthetic Speech" by Angela J. Corbett ("the Corbett Reference") as part of the prosecution of at least the '965 and '285 RAKTL asserted patents. Upon information and belief, Katz unreasonably delayed disclosing the Corbett Reference to the PTO and mischaracterized its materiality in connection with the prosecution of at least the '734, '120, '134 and '223 patents.

145.     Upon information and belief, Katz had knowledge of the Corbett Reference and its materiality at least as early as August 13, 1993 when it was disclosed in connection with the *First Data Resources Inc. v. West Interactive Corp., et al. Litigation*, Civil Action No. 91-4471-TJH, in the United States District Court for the Central District of California. Upon information and belief, First Data Resources (which later became known as RAKTL) had knowledge of the Corbett Reference in connection with West Interactive's motion for summary judgment of invalidity of the Katz patents at issue in that case.

146.    The Corbett Reference is material to certain of the claimed subject matter of at least the '965, '285, '734, '120, '134, and '223 patents. Corbett teaches use of identification to qualify access to a system (user name and password), limited use based on key numbers relating to limits on use (limiting the number of times a particular user can play a game), selectively repeating cues based on user identification, receiving entry of product identifier to check stock availability and price, and use of a single system to implement several different types of services.

147.    Because the Corbett Reference discloses many of the features claimed in the '965, '285, '734, '120, '134 and '223 patents, it would have been material to the PTO in deciding whether to allow the claims of those patents.

148.    Upon information and belief, Katz intentionally withheld the material Corbett Reference patent from the PTO during the prosecution of at least the '965 and '285 patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 and '285 patents unenforceable.

149.    Upon information and belief, Katz intentionally delayed disclosing the material Corbett Reference from the PTO during the prosecution of at least the '734, '120, '134 and '223 patents, denying the Examiner the opportunity to consider the reference in the substantive prosecution of those patents. Upon information and belief, Katz also mischaracterized the materiality of the Corbett Reference to the PTO. Upon information and belief, Katz took those actions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '734, '120, '134 and '223 patents unenforceable.

**The Moosemiller Reference**

150.    Upon information and belief, Katz had knowledge of and failed to disclose a reference entitled "AT&T's Conversant I Voice System" as part of the prosecution of at least the '965 and '734 patents with an intent to deceive the PTO.

151.    "AT&T's Conversant I Voice System," by John P. Moosemiller ("the Moosemiller Reference"), was published in the March/April 1986 issue of "Speech Technology." Upon

1    information and belief, Katz had knowledge of the Moosemiller Reference at least as early as July

2    21, 1998 in connection with a lawsuit brought by RAKTL and MCI Telecommunications Corp.

3    against AT&T Corp. and others in the United States District Court for the Eastern District of

4    Pennsylvania (Civil Action No. 97-CV-4453), in which RAKTL asserted that AT&T infringed

5    certain patents owned by RAKTL.

6         152.    The Moosemiller Reference was material to certain of the claimed subject matter

7    in at least the '965 and '734 patents.  Moosemiller disclosed use of DNIS to allow advance

8    classification of incoming calls for different applications which are greeted by appropriate

9    transaction prompts, system use in conjunction with ACD/PBX, qualification based on user

10   identification input, bridging to an attendant for help, or completing a partially automated

11   transaction, and application of IVR technology to several areas including financial services, credit

12   authorization, wholesale and retail distribution, sales order entry, direct marketing, transportation

13   scheduling and dispatching, college registration, communication services.

14        153.    Because the Moosemiller Reference discloses many of the features claimed in the

15   '965 and '734 patents, it would have been material to the PTO in deciding whether to allow the

16   claims of those patents.

17        154.    Upon information and belief, Katz intentionally withheld the material Moosemiller

18   Reference patent from the PTO during the prosecution of at least the '965 and '734 patents with

19   the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was

20   entitled, thereby committing inequitable conduct and rendering the '965 and '734 patents

21   unenforceable.

22                              **The Daudelin '995 patent**

23        155.    Upon information and belief, Katz had knowledge of and failed to disclose

24   U.S. Patent No. 4,943,995 ("the Daudelin '995 patent") as part of the prosecution of at least the

25   '120 patent.

26        156.    The Daudelin '995 patent is material to certain of the claimed subject matter under

27   consideration in the prosecution of at least the '120 patent.  The Daudelin '995 patent discloses a

28   system for receiving toll free calls directed to either one of two toll-free telephone numbers

1   associated with either business or consumer products.  Callers are provided product information

2   and can place orders, using automated voice response systems, human operators, or combinations

3   thereof.  Callers are qualified based in part on their calling party number, and the particular

4   product they selected.

5          157.    Because the Daudelin '995 patent discloses many of the features claimed in the

6   '120 patent, it would have been material to the PTO in deciding whether to allow the claims of

7   the '120 patent.  For example, the '120 patent claims receiving calls in a toll free mode, receiving

8   and testing calling number identification data, prompting callers with voice prompts, and

9   processing data entered by the callers.

10         158.    Upon information and belief, Katz was aware of the Daudelin '995 patent, having

11  cited it to the PTO more than two years prior to the issuance of the '120 patent.  Upon

12  information and belief, Katz listed the Daudelin '995 patent in previous IDS submissions during

13  the prosecution of Katz's patents, although Katz had misspelled the name as "Dandelin."

14         159.    Upon information and belief, Katz intentionally withheld the material Daudelin

15  '995 patent from the PTO during the prosecution of at least the '120 patent with the intent to

16  deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby

17  committing inequitable conduct and rendering the '120 patent unenforceable.

18         160.    The inequitable conduct committed by Katz with respect to the '120 patent taints

19  other related patents, which claim priority to the '120 patent and which claim related subject

20  matter to which the Daudelin '995 patent is material, rendering these related patents

21  unenforceable.

22         161.    At least, the '223 patent claims priority to the '120 patent and claims subject

23  matter related to the '120 patent to which the Daudelin '995 patent is material. Indeed, at least the

24  '223 and '120 patents share a common specification and related claimed subject matter.

25  Accordingly, at least the '223 patent is rendered unenforceable due to the inequitable conduct

26  committed by Katz as part of the prosecution of the related '120 patent.

27

28

162.     Accordingly, at least the '120 and '223 RAKTL asserted patents are rendered unenforceable for inequitable conduct due to Katz's intentional failure to disclose the Daudelin '995 patent to the PTO.

**Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During Prosecution Regarding the Daudelin Patent.**

163.     At least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively ("the Daudelin patents"), were cited during the prosecution of certain RAKTL asserted patents and related patents.  The specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

164.     Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the RAKTL asserted patents and failed to inform the different patent examiners of Katz's inconsistent positions.

165.     For example, as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent as not disclosing "DNIS or like function".

166.     Whereas, contrary to the position Katz took as part of the prosecution of the '734 patent, Katz characterized the Daudelin '910 patent, as part of the prosecution of the '551 patent, as disclosing "DNIS or like function".

167.     Likewise, during the prosecution of the '893 patent, Katz characterized the '910 Daudelin patent as disclosing "DNIS or like function".

168.     Subsequently, however, contrary to the positions taken as part of the prosecution of the '551 and '893 patents, Katz took the position as part of the prosecution of the '360 patent that "Daudelin does not teach DNIS."

169.     Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the

1    PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing

2    inequitable conduct and rendering at least the '551, '734, '893 and '360 RAKTL asserted patents

3    unenforceable.

4         170.    At least the '120, '065, and '223 patents, which are RAKTL asserted patents, all

5    claim priority to one or more of the '551, '734, '893 and '360 patents and claim subject matter

6    related to these patents to which the Daudelin patents are material. Accordingly, at least the '120,

7    '065 and '223 patents are likewise rendered unenforceable due to the inequitable conduct

8    committed by Katz as part of the prosecution of the related '551, '734, '893 and '360 patents.

9         171.    Accordingly, at least the '551, '734, '893, '120, '065, '223 and '360 RAKTL

10   asserted patents are all rendered unenforceable for inequitable conduct due to Katz's intentionally

11   taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners

12   at different times and failing to inform the different patent examiners of Katz's prior inconsistent

13   positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which

14   Katz was entitled.

15        **Katz's Intentional Failure to Inform the PTO of Inconsistent Positions Taken During
         Prosecution Regarding the Riskin Patent.**

16

17        172.    Upon information and belief, Katz also failed to inform the PTO of inconsistent

18   positions that Katz took with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

19        173.    As part of the prosecution of the '075 patent, Katz stated "that the Riskin patent

20   discloses the utilization of ANI and DNIS signals to accomplish routing. . . ."

21        174.    Contrary to Katz's characterization of the Riskin patent in the '075 patent, Katz

22   maintained as part of the prosecution of the '120 patent that the Riskin patent disclosed aspects

23   pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

24        175.    By taking inconsistent positions as to the scope of the Riskin patent at different

25   times and failing to inform the patent examiner of the prior inconsistent positions, and having the

26   intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled,

27   Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents

28   unenforceable.

176.    At least the '156, '135 and '223 patents, which are RAKTL asserted patents, all claim priority to one or more of the '075 and '120 patents and claim subject matter related to these patents to which the Riskin patent is material.  Accordingly, at least the '156, '135 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

177.    Accordingly, at least the '156, '120, '135 and '223 RAKTL asserted patents are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

**Katz's Intentional Failure to Identify or Disclose Material Information From Related Litigations or Proceedings.**

178.    Pursuant to MPEP § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the PTO has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising therefrom."

179.    Upon information and belief, as set forth below, as part of the prosecution of several of the RAKTL asserted patents, Katz failed to identify or disclose material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the RAKTL asserted patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

**Katz's Failure to disclose the West Interactive Corp. v. First Data Resources, Inc. Litigation.**

180.    On October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska. West alleged, *inter alia,* that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several theories including prior use and prior art.

181.    West's allegations in that suit are material to at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 RAKTL asserted patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

182.    Upon information and belief, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation during the prosecution of these RAKTL asserted patents.

183.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of the subject matter of West's allegations to the PTO as part of the prosecution of at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 RAKTL asserted patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the First Data Resources, Inc. v. 900 Million, Inc., et al. Litigation.**

184.    On October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '773 patents.

185.    The defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150 and '773 patents.

186.    The defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 RAKTL asserted patents, all of which claim priority to at least the '739 patent.

187.    Upon information and belief, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation during the prosecution of these RAKTL asserted patents.

188.    Nonetheless, upon information and belief, Katz failed to disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and the subject matter of the defendants' allegations to the PTO as part of the prosecution of at least the '252, '734, '120, '223, '965, '134, '156, '135, '863, '762, '551, '065, '360, '309, '707, '285 and '893 RAKTL asserted patents with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the First Data Resources Inc. v. West Interactive Corp., et al. Litigation**

189.    On August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

190.    The defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, *inter alia,* the invalidity and unenforceability of the '739, '298 and '150 patents.

191.    The defendants' allegations in that suit are material to at least the '285, '863, '551, '734, '893, '120, '135 and '134 RAKTL asserted patents, all of which claim priority to at least the '739 patent.

192.    Upon information and belief, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation during the prosecution of these RAKTL asserted patents.

193.    Nonetheless, upon information and belief, as part of the prosecution of at least the '863, '551, '734, '893, '120, '135 and '134 RAKTL asserted patents, Katz failed to disclose to the PTO the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al. Litigation.**

194.    On February 9, 1999, RAKTL filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '285, '863, '734, '023 and '707 patents.

195.    In response to RAKTL's Complaint, the defendants in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, *inter alia,* that the '739, '153, '252, '285, '023, '707, '863 and '734 patents are invalid and/or unenforceable.

196.    The defendant's allegations in the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '135, '065, '965 and '134 RAKTL asserted patents, which are related patents to the patents at issue in that suit.

197.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation during the prosecution of these RAKTL asserted patents.

198.    Nonetheless, upon information and belief, as part of the prosecution of at least the '135, '065 and '965 RAKTL asserted patents, Katz intentionally failed to disclose to the PTO the existence of the *Ronald A. Katz Technology Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation (or in the case of the '134 patent, Katz waited to report the existence of the litigation until after prosecution on the merits had closed) and of the subject matter of the defendants' allegations with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Katz's Failure to Disclose the Ronald A. Katz Technology Licensing, L.P., et al. v. AT&T Corp., et al. Litigation.**

199.    On July 8, 1997, RAKTL and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for

1  the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '631,

2  '153, '252, '309, '023, '285, '645, '120, '707 and '863 patents and U.S. Patent No. 5,349,633

3  ("the '633 patent").

4        200.    In reply, AT&T Corp. asserted, *inter alia,* that the '739, '150, '298, '075, '929,

5  '631, '153, '252, '309, '023, '285, '645, '120, '707, '863 and '633 patents are invalid.

6        201.    AT&T Corp.'s allegations in the *Ronald A. Katz Technology Licensing, L.P. v.*

7  *AT&T Corp., et al.* litigation are material to at least the '762, '893, '120 and '135 RAKTL

8  asserted patents, which are related to and claim related subject matter to the patents involved in

9  that litigation.

10       202.    Upon information and belief, Katz was aware of the *Ronald A. Katz Technology*

11 *Licensing, L.P. v. AT&T Corp., et al.* litigation during the prosecution of the '762, '893, '120 and

12 '135 RAKTL asserted patents.

13       203.    Nonetheless, upon information and belief, Katz failed to disclose the existence of

14 the *Ronald A. Katz Technology Licensing, L.P. v. AT&T Corp., et al.,* litigation and of the subject

15 matter of AT&T Corp.'s allegations to the PTO as part of the prosecution of at least the '762,

16 '893, '120 and '135 RAKTL asserted patents with the intent to deceive the PTO into issuing

17 patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct

18 and rendering these patents unenforceable.

19              **Katz's Failure To Disclose Patent Interference No. 103,697.**

20       204.    Patent Interference No. 103,697 was declared on February 13, 1996, and was

21 finalized by November 20, 1996. One conclusion of the Board of Patent Appeals and

22 Interferences in that patent inference was that the '968 patent specification did not provide written

23 support for certain limitations claimed by Katz, which included transferring calls to an operator in

24 certain circumstances.

25       205.    The Board of Patent Appeals and Interferences's conclusion that the '968 patent

26 lacked written support for certain alleged limitations would have been material to the patent

27 examiners of the '863, '156, '965, '734, '762, '893, '120 and '134 RAKTL asserted patents, for

28 purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior

1  art.  Indeed, upon information and belief, all of these RAKTL asserted patents claim priority to

2  the '968 patent, and many of them, including at least the '863, '156, '551 and the '134 patents,

3  are disclaimed with respect to the '968 patent.

4  206.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the

5  existence of Patent Interference No. 103,697 and the Board of Patent Appeals and Interferences'

6  findings to the patent examiners of at least the '863, '156, '965, '734, '762, '893, '120 and '134

7  RAKTL asserted patents with the intent to deceive the PTO into issuing patent claims of a scope

8  beyond which Katz was entitled, thereby committing inequitable conduct and rendering these

9  patents unenforceable.

10  **Katz's Failure to Disclose Adverse Findings From Appeal Rulings.**

11  207.    Upon information and belief, Katz failed to inform the patent examiners of certain

12  of the RAKTL asserted patents of the existence and outcome of certain Appeal Rulings of related

13  patents that were adverse or contrary to positions Katz took during the prosecution of the RAKTL

14  asserted patents.

15  208.    For example, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of

16  Patent Appeals and Interferences found that the Barger patent, which is prior art to the RAKTL

17  asserted patents, disclosed a multiple format system for interacting with callers based on the

18  callers dialing distinct telephone numbers.

19  209.    The Board of Patent Appeals and Interferences's finding with respect to the scope

20  of disclosure of the Barger patent would have been material to the patent examiners of at least the

21  '846, '156, '734, '762, '893, '120, '065, '965 and '134 patents with respect to any claims reciting

22  a multiple format limitation.

23  210.    Nonetheless, upon information and belief, Katz intentionally failed to disclose the

24  Board of Patent Appeals and Interferences's finding with respect to the scope of disclosure of the

25  Barger patent, with the intent to deceive the PTO into issuing patent claims of a scope beyond

26  which Katz was entitled, thereby committing inequitable conduct and rendering the '846, '156,

27  '734, '762, '893, '120, '065, '965 and '134 patents unenforceable.

28

211.    The inequitable conduct committed by Katz with respect to the '846, '156, '734, '762, '893, '120, '065, '965 and '134 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences's finding with respect to the scope of disclosure of the Barger patent would have been material, thereby, rendering these related patents, including at least the '135, '223 and '360 patents unenforceable.

### Katz's False Claims of Priority Made To Avoid the Prior Art.

212.    Upon information and belief, during the prosecution of several RAKTL asserted patents, Katz made false claims of priority to earlier applications with the intent to avoid prior art, as set forth below.

213.    For example, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz made the false claim that "the international application [87/00375] is not properly a reference against the present case."  This assertion is false, since international application [87/00375], *i.e.,* the WO '375 application, was published more than one year prior to the filing of the '734 patent, and therefore, is prior art to any new matter introduced and claimed in the '734 patent, which was based on a continuation-in-part application.  Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '984 patent, in order to antedate the WO '375 application.

214.    Likewise, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,792,461 to ("the Brown patent") to the PTO, but falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at page 11-12.  In fact, the relevant pending application's claims did not predate Brown because in the '150 patent there is no suggestion of multiple call modes, as claimed in the '734 patent.  Therefore, upon information and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution of the '734 patent, in order to antedate the Brown patent.

215.    Similarly, upon information and belief, during prosecution of the '734 patent, Katz used the same approach to mislead the patent examiner in order to antedate a prior art reference

1   by Hester.  Katz stated "the reference by Hester bears a date of 1985, apparently 'September'.  In

2   that regard, it is noteworthy that the present application is related to a parent case filed July 10,

3   1985."  The parent application Katz referenced, however, does not disclose toll free calls nor 900

4   "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such

5   limitations is entitled to claim priority to that parent application's filing date. Therefore, upon

6   information and belief, Katz intentionally misrepresented the priority dates for claims during the

7   prosecution of the '734 patent, in order to antedate the Hester reference.

8       216.    Likewise, upon information and belief, during prosecution of the '734 patent, Katz

9   mischaracterized his pending application with respect to the prior art U.S. Patent 4,797,913 to

10  Kaplan ("the Kaplan patent"), which was filed on August 4, 1987.  Specifically, Katz stated "the

11  present application is entitled to a priority date earlier than that of the subject reference." Upon

12  information and belief, Katz's statement was false at the time it was made since there were claims

13  in Katz's application (such as then pending claim 17) which contained and claimed new subject

14  matter, and were, therefore, not entitled to an earlier priority date.  Therefore, upon information

15  and belief, Katz intentionally misrepresented the priority dates for claims during the prosecution

16  of the '734 patent, in order to antedate the Kaplan patent.

17      217.    Upon information and belief, in violation of the duty of good faith and candor,

18  Katz made the above-identified false claims to priority in order to avoid the prior art and to

19  deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby

20  committing inequitable conduct and rendering the '984 and '734 patents unenforceable.

21      218.    In addition, the inequitable conduct committed by Katz with respect to the '984

22  and '734 patents taints other related patents, namely the '252, '120 and '223 RAKTL asserted

23  patents, which claim priority to these patents and which claim related subject matter to which the

24  prior art patents are material, rendering these related patents unenforceable.

25      219.    As set forth above, Katz engaged in a pattern and practice of inequitable conduct

26  throughout the prosecution of the RAKTL asserted patents and/or other related patents that

27  infected, either directly or indirectly, all of the RAKTL asserted patents, thereby rendering them

28  unenforceable for inequitable conduct.

1    220.    The investigation of the Kaiser Permanente Defendants is ongoing.  The Kaiser

2    Permanente Defendants reserve the right to seek leave to amend their Answer, Affirmative

3    Defenses and Counterclaims to include additional facts or bases of inequitable conduct as they

4    become known.

5                                        **COUNTERCLAIMS**

6        Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Counterclaim Plaintiffs

7    Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, The Permanente Company,

8    LLC, The Permanente Federation LLC, and The Permanente Medical Group, Inc. (collectively

9    "the Kaiser Permanente Defendants") allege the following counterclaims against Counterclaim

10   Defendant RAKTL:

11       1.    This is an action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201

12   and 2202, and under the United States Patent Act, 35 U.S.C. §1, *et seq*.  The Kaiser Permanente

13   Defendants request a judicial declaration that (1) they do not infringe any valid, enforceable claim

14   of the '968, '252, '309, '285, '707, '863, '156, '551, '734, '762, '893, '120, '135, '065, '965,

15   '134, '223 and '360 patents (collectively "the RAKTL asserted patents"), (2) the RAKTL asserted

16   patents are invalid, and (3) the RAKTL asserted patents are unenforceable.

17       2.    Kaiser Foundation Health Plan, Inc. is a corporation organized under the laws of

18   the state of California with a principal place of business at One Kaiser Plaza, Oakland, CA 94612.

19       3.    Kaiser Foundation Hospitals is a corporation organized under the laws of the state

20   of California with a principal place of business at One Kaiser Plaza, Oakland, CA 94612.

21       4.    The Permanente Company, LLC is a limited liability company organized under the

22   laws of the state of Delaware with a principal place of business at One Kaiser Plaza, Oakland, CA

23   94612.

24       5.    The Permanente Federation LLC is a limited liability company organized under

25   the laws of the state of California with a principal place of business at One Kaiser Plaza, Oakland,

26   CA 94612.

27

28

---

6.     The Permanente Medical Group, Inc. is a corporation organized under the laws of the state of California with a principal place of business at 1950 Franklin Street, Oakland, CA 94612.

7.     On information and belief, RAKTL is a limited partnership organized under the laws of the state of California and having its principal place of business at 9220 Sunset Blvd., Suite #315, Los Angeles, California.

8.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201 and 2202, and 35 U.S.C. § 1 *et seq*.

9.     RAKTL has submitted to the personal jurisdiction of this Court by bringing the instant action.

<u>COUNTERCLAIM I</u>
**(Declaratory Judgment Regarding the '968 Patent)**

10.     The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

11.     RAKTL purports to be the sole holder of the entire right, title and interest in the '968 patent.

12.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '968 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '968 patent.

13.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '968 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

14.     To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '968 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

15. The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '968 patent and/or that the claims of the '968 patent are invalid and/or unenforceable.

## COUNTERCLAIM II
### (Declaratory Judgment Regarding the '252 Patent)

16. The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

17. RAKTL purports to be the sole holder of the entire right, title and interest in the '252 patent.

18. RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '252 patent. Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '252 patent.

19. The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '252 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

20. To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '252 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

21. The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '252 patent and/or that the claims of the '252 patent are invalid and/or unenforceable.

1

2

### COUNTERCLAIM III
#### (Declaratory Judgment Regarding the '309 Patent)

3      22.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

4   preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

5   Defenses as if fully set forth herein.

6      23.    RAKTL purports to be the sole holder of the entire right, title and interest in the

7   '309 patent.

8      24.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

9   infringement of the '309 patent.  Thus, an immediate, real and justiciable controversy exists

10  between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

11  validity and enforceability of the '309 patent.

12     25.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

13  and have not induced infringement or contributed to infringement of any valid, enforceable claim

14  of the '309 patent under any theory, including literal infringement or infringement under the

15  doctrine of equivalents.

16     26.    To the extent that the Kaiser Permanente Defendants are found to infringe any

17  claim of the '309 patent, that claim is unenforceable and/or invalid for failure to meet the

18  conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

19     27.    The Kaiser Permanente Defendants request a declaratory judgment that they have

20  not and do not infringe, directly or indirectly, any valid and enforceable claim of the '309 patent

21  and/or that the claims of the '309 patent are invalid and/or unenforceable.

22

### COUNTERCLAIM IV
#### (Declaratory Judgment Regarding the '285 Patent)

23

24     28.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

25  preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

26  Defenses as if fully set forth herein.

27     29.    RAKTL purports to be the sole holder of the entire right, title and interest in the

28  '285 patent.

30.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '285 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '285 patent.

31.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '285 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

32.     To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '285 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

33.     The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '285 patent and/or that the claims of the '285 patent are invalid and/or unenforceable.

## COUNTERCLAIM V
### (Declaratory Judgment Regarding the '707 Patent)

34.     The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

35.     RAKTL purports to be the sole holder of the entire right, title and interest in the '707 patent.

36.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '707 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '707 patent.

37.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim

1    of the '707 patent under any theory, including literal infringement or infringement under the

2    doctrine of equivalents.

3        38.    To the extent that the Kaiser Permanente Defendants are found to infringe any

4    claim of the '707 patent, that claim is unenforceable and/or invalid for failure to meet the

5    conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

6        39.    The Kaiser Permanente Defendants request a declaratory judgment that they have

7    not and do not infringe, directly or indirectly, any valid and enforceable claim of the '707 patent

8    and/or that the claims of the '707 patent are invalid and/or unenforceable.

9                            **COUNTERCLAIM VI**
                    **(Declaratory Judgment Regarding the '863 Patent)**
10

11        40.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

12    preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

13    Defenses as if fully set forth herein.

14        41.    RAKTL purports to be the sole holder of the entire right, title and interest in the

15    '863 patent.

16        42.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

17    infringement of the '863 patent. Thus, an immediate, real and justiciable controversy exists

18    between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

19    validity and enforceability of the '863 patent.

20        43.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

21    and have not induced infringement or contributed to infringement of any valid, enforceable claim

22    of the '863 patent under any theory, including literal infringement or infringement under the

23    doctrine of equivalents.

24        44.    To the extent that the Kaiser Permanente Defendants are found to infringe any

25    claim of the '863 patent, that claim is unenforceable and/or invalid for failure to meet the

26    conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

27

28

45.     The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '863 patent and/or that the claims of the '863 patent are invalid and/or unenforceable.

**COUNTERCLAIM VII**
**(Declaratory Judgment Regarding the '156 Patent)**

46.     The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

47.     RAKTL purports to be the sole holder of the entire right, title and interest in the '156 patent.

48.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '156 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '156 patent.

49.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '156 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

50.     To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '156 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

51.     The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '156 patent and/or that the claims of the '156 patent are invalid and/or unenforceable.

1

2

### COUNTERCLAIM VIII
#### (Declaratory Judgment Regarding the '551 Patent)

3      52.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

4   preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

5   Defenses as if fully set forth herein.

6      53.    RAKTL purports to be the sole holder of the entire right, title and interest in the

7   '551 patent.

8      54.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

9   infringement of the '551 patent.  Thus, an immediate, real and justiciable controversy exists

10  between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

11  validity and enforceability of the '551 patent.

12     55.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

13  and have not induced infringement or contributed to infringement of any valid, enforceable claim

14  of the '551 patent under any theory, including literal infringement or infringement under the

15  doctrine of equivalents.

16     56.    To the extent that the Kaiser Permanente Defendants are found to infringe any

17  claim of the '551 patent, that claim is unenforceable and/or invalid for failure to meet the

18  conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

19     57.    The Kaiser Permanente Defendants request a declaratory judgment that they have

20  not and do not infringe, directly or indirectly, any valid and enforceable claim of the '551 patent

21  and/or that the claims of the '551 patent are invalid and/or unenforceable.

22  ### COUNTERCLAIM IX
#### (Declaratory Judgment Regarding the '734 Patent)

23

24     58.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

25  preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

26  Defenses as if fully set forth herein.

27     59.    RAKTL purports to be the sole holder of the entire right, title and interest in the

28  '734 patent.

60.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '734 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '734 patent.

61.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '734 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

62.    To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '734 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

63.    The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '734 patent and/or that the claims of the '734 patent are invalid and/or unenforceable.

## COUNTERCLAIM X
### (Declaratory Judgment Regarding the '762 Patent)

64.    The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

65.    RAKTL purports to be the sole holder of the entire right, title and interest in the '762 patent.

66.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '762 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '762 patent.

67.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim

1   of the '762 patent under any theory, including literal infringement or infringement under the

2   doctrine of equivalents.

3       68.    To the extent that the Kaiser Permanente Defendants are found to infringe any

4   claim of the '762 patent, that claim is unenforceable and/or invalid for failure to meet the

5   conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

6       69.    The Kaiser Permanente Defendants request a declaratory judgment that they have

7   not and do not infringe, directly or indirectly, any valid and enforceable claim of the '762 patent

8   and/or that the claims of the '762 patent are invalid and/or unenforceable.

9
10
## COUNTERCLAIM XI
### (Declaratory Judgment Regarding the '893 Patent)

11
12      70.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

13  preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

14  Defenses as if fully set forth herein.

15      71.    RAKTL purports to be the sole holder of the entire right, title and interest in the

16  '893 patent.

17      72.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

18  infringement of the '893 patent.  Thus, an immediate, real and justiciable controversy exists

19  between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

20  validity and enforceability of the '893 patent.

21      73.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

22  and have not induced infringement or contributed to infringement of any valid, enforceable claim

23  of the '893 patent under any theory, including literal infringement or infringement under the

24  doctrine of equivalents.

25      74.    To the extent that the Kaiser Permanente Defendants are found to infringe any

26  claim of the '893 patent, that claim is unenforceable and/or invalid for failure to meet the

27  conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

28

1    75.    The Kaiser Permanente Defendants request a declaratory judgment that they have

2    not and do not infringe, directly or indirectly, any valid and enforceable claim of the '893 patent

3    and/or that the claims of the '893 patent are invalid and/or unenforceable.

4    **COUNTERCLAIM XII**
     **(Declaratory Judgment Regarding the '120 Patent)**

5

6    76.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

7    preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

8    Defenses as if fully set forth herein.

9    77.    RAKTL purports to be the sole holder of the entire right, title and interest in the

10   '120 patent.

11   78.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

12   infringement of the '120 patent.  Thus, an immediate, real and justiciable controversy exists

13   between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

14   validity and enforceability of the '120 patent.

15   79.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

16   and have not induced infringement or contributed to infringement of any valid, enforceable claim

17   of the '120 patent under any theory, including literal infringement or infringement under the

18   doctrine of equivalents.

19   80.    To the extent that the Kaiser Permanente Defendants are found to infringe any

20   claim of the '120 patent, that claim is unenforceable and/or invalid for failure to meet the

21   conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

22   81.    The Kaiser Permanente Defendants request a declaratory judgment that they have

23   not and do not infringe, directly or indirectly, any valid and enforceable claim of the '120 patent

24   and/or that the claims of the '120 patent are invalid and/or unenforceable.

25

26

27

28

1

2

## COUNTERCLAIM XIII
### (Declaratory Judgment Regarding the '135 Patent)

3      82.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

4  preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

5  Defenses as if fully set forth herein.

6      83.    RAKTL purports to be the sole holder of the entire right, title and interest in the

7  '135 patent.

8      84.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

9  infringement of the '135 patent.  Thus, an immediate, real and justiciable controversy exists

10 between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

11 validity and enforceability of the '135 patent.

12     85.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

13 and have not induced infringement or contributed to infringement of any valid, enforceable claim

14 of the '135 patent under any theory, including literal infringement or infringement under the

15 doctrine of equivalents.

16     86.    To the extent that the Kaiser Permanente Defendants are found to infringe any

17 claim of the '135 patent, that claim is unenforceable and/or invalid for failure to meet the

18 conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

19     87.    The Kaiser Permanente Defendants request a declaratory judgment that they have

20 not and do not infringe, directly or indirectly, any valid and enforceable claim of the '135 patent

21 and/or that the claims of the '135 patent are invalid and/or unenforceable.

22

## COUNTERCLAIM XIV
### (Declaratory Judgment Regarding the '065 Patent)

23

24     88.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

25 preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

26 Defenses as if fully set forth herein.

27     89.    RAKTL purports to be the sole holder of the entire right, title and interest in the

28 '065 patent.

90.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '065 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '065 patent.

91.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim of the '065 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

92.     To the extent that the Kaiser Permanente Defendants are found to infringe any claim of the '065 patent, that claim is unenforceable and/or invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

93.     The Kaiser Permanente Defendants request a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid and enforceable claim of the '065 patent and/or that the claims of the '065 patent are invalid and/or unenforceable.

## <u>COUNTERCLAIM XV</u>
### (Declaratory Judgment Regarding the '965 Patent)

94.     The Kaiser Permanente Defendants repeat and reallege the allegations of the preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative Defenses as if fully set forth herein.

95.     RAKTL purports to be the sole holder of the entire right, title and interest in the '965 patent.

96.     RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging infringement of the '965 patent.  Thus, an immediate, real and justiciable controversy exists between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement, validity and enforceability of the '965 patent.

97.     The Kaiser Permanente Defendants do not infringe, have not infringed, and do not and have not induced infringement or contributed to infringement of any valid, enforceable claim

1   of the '965 patent under any theory, including literal infringement or infringement under the

2   doctrine of equivalents.

3       98.    To the extent that the Kaiser Permanente Defendants are found to infringe any

4   claim of the '965 patent, that claim is unenforceable and/or invalid for failure to meet the

5   conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

6       99.    The Kaiser Permanente Defendants request a declaratory judgment that they have

7   not and do not infringe, directly or indirectly, any valid and enforceable claim of the '965 patent

8   and/or that the claims of the '965 patent are invalid and/or unenforceable.

9                      **COUNTERCLAIM XVI**
                **(Declaratory Judgment Regarding the '134 Patent)**
10

11      100.   The Kaiser Permanente Defendants repeat and reallege the allegations of the

12  preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

13  Defenses as if fully set forth herein.

14      101.   RAKTL purports to be the sole holder of the entire right, title and interest in the

15  '134 patent.

16      102.   RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

17  infringement of the '134 patent.  Thus, an immediate, real and justiciable controversy exists

18  between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

19  validity and enforceability of the '134 patent.

20      103.   The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

21  and have not induced infringement or contributed to infringement of any valid, enforceable claim

22  of the '134 patent under any theory, including literal infringement or infringement under the

23  doctrine of equivalents.

24      104.   To the extent that the Kaiser Permanente Defendants are found to infringe any

25  claim of the '134 patent, that claim is unenforceable and/or invalid for failure to meet the

26  conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

27

28

1    105.    The Kaiser Permanente Defendants request a declaratory judgment that they have

2    not and do not infringe, directly or indirectly, any valid and enforceable claim of the '134 patent

3    and/or that the claims of the '134 patent are invalid and/or unenforceable.

4                                   **COUNTERCLAIM XVII**
                      **(Declaratory Judgment Regarding the '223 Patent)**
5

6    106.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

7    preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

8    Defenses as if fully set forth herein.

9    107.    RAKTL purports to be the sole holder of the entire right, title and interest in the

10   '223 patent.

11   108.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

12   infringement of the '223 patent.  Thus, an immediate, real and justiciable controversy exists

13   between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

14   validity and enforceability of the '223 patent.

15   109.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

16   and have not induced infringement or contributed to infringement of any valid, enforceable claim

17   of the '223 patent under any theory, including literal infringement or infringement under the

18   doctrine of equivalents.

19   110.    To the extent that the Kaiser Permanente Defendants are found to infringe any

20   claim of the '223 patent, that claim is unenforceable and/or invalid for failure to meet the

21   conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

22   111.    The Kaiser Permanente Defendants request a declaratory judgment that they have

23   not and do not infringe, directly or indirectly, any valid and enforceable claim of the '223 patent

24   and/or that the claims of the '223 patent are invalid and/or unenforceable.

25

26

27

28

1
2

## COUNTERCLAIM XVIII
### (Declaratory Judgment Regarding the '360 Patent)

3    112.    The Kaiser Permanente Defendants repeat and reallege the allegations of the

4    preceding paragraphs 1-9 in this counterclaim, and paragraphs 68-220 of their Affirmative

5    Defenses as if fully set forth herein.

6    113.    RAKTL purports to be the sole holder of the entire right, title and interest in the

7    '360 patent.

8    114.    RAKTL has sued the Kaiser Permanente Defendants in the present action, alleging

9    infringement of the '360 patent.  Thus, an immediate, real and justiciable controversy exists

10    between RAKTL and the Kaiser Permanente Defendants with respect to the alleged infringement,

11    validity and enforceability of the '360 patent.

12    115.    The Kaiser Permanente Defendants do not infringe, have not infringed, and do not

13    and have not induced infringement or contributed to infringement of any valid, enforceable claim

14    of the '360 patent under any theory, including literal infringement or infringement under the

15    doctrine of equivalents.

16    116.    To the extent that the Kaiser Permanente Defendants are found to infringe any

17    claim of the '360 patent, that claim is unenforceable and/or invalid for failure to meet the

18    conditions for patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112, *et al.*

19    117.    The Kaiser Permanente Defendants request a declaratory judgment that they have

20    not and do not infringe, directly or indirectly, any valid and enforceable claim of the '360 patent

21    and/or that the claims of the '360 patent are invalid and/or unenforceable.

22    ## PRAYER FOR RELIEF

23    WHEREFORE, the Kaiser Permanente Defendants respectfully request that this Court

24    enter judgment in their favor and grant the following relief:

25    A.    A declaration that the Kaiser Permanente Defendants do not infringe any valid and

26    enforceable claim of the '968, '252, '309, '285, '707, '863, '156, '551, '734, '762, '893, '120,

27    '135, '065, '965, '134, '223 and '360 patents;

28

1        B.      A declaration that the claims of the '968, '252, '309, '285, '707, '863, '156, '551,

2  '734, '762, '893, '120, '135, '065, '965, '134, '223 and '360 patents are invalid;

3        C.      A declaration that the '968, '252, '309, '285, '707, '863, '156, '551, '734, '762,

4  '893, '120, '135, '065, '965, '134, '223 and '360 patents are unenforceable;

5        D.      Dismissal of RAKTL's claims in their entirety and with prejudice;

6        E.      A declaration that RAKTL take nothing by way of its complaint;

7        F.      An order awarding the Kaiser Permanente Defendants their costs pursuant to 35

8  U.S.C. § 284;

9        G.      An order finding that this is an exceptional case and awarding the Kaiser

10  Permanente Defendants their reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

11        H.      An order awarding such other relief as the Court may deem appropriate under the

12  circumstances.

13                          **JURY TRIAL DEMAND**

14        The Kaiser Permanente Defendants hereby demand a trial by jury on all issues triable as

15  of right by a jury in this action.

16  Dated: August 6, 2007                RACHEL KREVANS

17                                     MICHAEL W. VELLA

                                     JASON A. CROTTY

18                                     ELISABETH S. TRAUGOTT

                                     MORRISON & FOERSTER LLP

19

20                          By:    /s/ Jason A. Crotty

21                                Jason A. Crotty

22                            Attorneys for Defendants

                                   KAISER FOUNDATION HEALTH PLAN,

23                              INC., KAISER FOUNDATION HOSPITALS,

                                   THE PERMANENTE COMPANY, LLC, THE

24                            PERMANENTE FEDERATION LLC, and

                                   THE PERMANENTE MEDICAL GROUP,

25                          INC.

26

27

28

1

### ECF CERTIFICATION

2      I, Elisabeth S. Traugott, am the ECF User whose identification and password are being

3  used to file this Kaiser Permanente Defendants' Answer, Affirmative Defenses and

4  Counterclaims.  In compliance with General Order No. 45, § X.B., I hereby attest that Jason A.

5  Crotty has concurred in this filing.

6  Dated: August 8, 2007                    ___/s/ Elisabeth S. Traugott_____
                                              Elisabeth S. Traugott

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28